**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| YUQI ZHANG,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>LAN FEI,<br><br><br>　　　　　　Defendant. | Civil Case No.: 2:26-cv-01097-RJC<br><br><br><br>**FILED UNDER SEAL** |

**FIRST AMENDED COMPLAINT**

Plaintiff hereby sues Lan Fei ("Defendant"). Defendant is knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling infringing versions of Plaintiff's copyrighted works (the "Infringing Products") on the Amazon.com online marketplaces, operating under the seller identities and/or the online marketplace accounts "█████████████ (the "Seller ID"). In support of its claims, Plaintiff alleges as follows:

**NATURE OF ACTION**

1.    Plaintiff is the owner of a United States Registered Copyright which is infringed by Defendant. Defendant has infringed Plaintiff's Registered Copyright.

1

Below is a side-by-side comparison of Plaintiff's copyrighted work and an example of Defendant's products that embody Plaintiff's copyrighted work:



## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

3.      Personal jurisdiction over a non-resident of the state in which the Court sits is proper to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over Defendant pursuant to § 5322 of the Pennsylvania Consolidated Statutes, Title 42, (the "Pennsylvania Long Arm Statute") which provides in pertinent part:

a. **General Rule**. A tribunal of this Commonwealth may exercise personal jurisdiction over a person … who acts directly or by an agent, as to a cause of action or other matter arising from such person:

   (1)  Transacting any business in this Commonwealth [including, but not limited to:]…

      (i)    The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

      (ii)   The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

      (iii)  The shipping of merchandise directly or indirectly into or through this Commonwealth.

      (iv)  The engaging in any business or profession within this Commonwealth.

* * *

   (3) Causing harm or tortious injury by an act or omission in this Commonwealth.

   (4)  Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

* * *

   (10) Committing any violation within the jurisdiction of this Commonwealth of any statute … or rule or regulation promulgated thereunder by any government unit.

b. **Exercise of full constitutional power over nonresidents**. In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

3

42 Pa. Cons. Stat. § 5322.

4. The Pennsylvania Long Arm Statute confers personal jurisdiction over Defendant because Defendant regularly conducts, transacts, and/or solicits business in Pennsylvania and in this Judicial District and, upon information and belief, derives substantial revenue from its business transactions in Pennsylvania and in this Judicial District. Defendant has availed itself of the privileges and protections of the laws of Pennsylvania, such that this Court's assertion of jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice. Defendant should reasonably expect that its actions in and outside of Pennsylvania would subject it to legal action in Pennsylvania and this Judicial District. For example:

   a. Defendant has directed its business activities at consumers in Pennsylvania via Amazon.com online marketplaces, through which consumers in Pennsylvania can view Defendant's online storefronts, communicate with Defendant regarding Defendant's Infringing Products, and place orders for, purchase, and receive delivery of Defendant's Infringing Products in Pennsylvania.

   b. Defendant is a sophisticated seller on Amazon.com, operating one or more commercial businesses through which Defendant operates online storefronts to promote, advertise, distribute, offer for sale, and sell the

Infringing Products imported into the United States.

c. Defendant (although a foreign entity) accepts payment in U.S. Dollars and offers shipping to Pennsylvania and this Judicial District (and calculates, charges, and remits tax based on sales into Pennsylvania and this Judicial District).

d. Upon information and belief, Defendant employs and benefits from paid advertising, marketing, and advertising strategies (e.g., search engine optimization or "SEO") in order to create an infringing marketplace operating in parallel to the legitimate marketplace of Plaintiff and third parties authorized to sell products embodying Plaintiff's copyrighted works, and to make its online storefront appear more relevant and target a consumer searching for products embodying Plaintiff's copyrighted works. By its actions, in addition to the damages associated with unauthorized use of Plaintiff's copyrighted works, Defendant is causing irreparable harm to Plaintiff and the consuming public by: (1) reducing the online visibility of Plaintiff's copyrighted works; (2) diluting and eroding the retail market price for Plaintiff's copyrighted works; (3) causing overall degradation of the value of goodwill associated with Plaintiff's copyrighted works; (4) devaluing the exclusivity that enhances the worth of Plaintiff's photograph and reputation; and (5) increasing

Plaintiff's overall cost to market its goods and educate consumers about Plaintiff's copyrighted works.

e.  Defendant is concurrently targeting its infringing activities toward consumers in, and causing harm in, Pennsylvania.

f.  Defendant resides and/or operates in a foreign jurisdiction with an intellectual property enforcement system and is cooperating by creating an illegal stream of infringing goods. (See, e.g., https://sellerdefense.cn/). Defendant regularly removes and adds products from its online storefronts, making it extremely difficult to enforce Plaintiff's intellectual property under the laws of the United States.

g.  Upon information and belief, Defendant is aware of Plaintiff and Plaintiff's copyrighted works and is aware that its infringement is likely to cause harm to Plaintiff in the United States, Pennsylvania, and this Judicial District.

h.  Plaintiff is suffering irreparable and indivisible injury and has suffered substantial damages as a result of Defendant's unauthorized sale of the Infringing Products in direct competition with Plaintiff.

5.  Alternatively, if Defendant contends that its use of Amazon.com should not be construed as contacts with the individual states and the Court accepts that contention, Federal Rule of Civil Procedure 4(k)(2) confers personal jurisdiction over

Defendant because (1) the claims asserted herein arise under federal copyright law; (2) Defendant would not be subject to jurisdiction in any state's courts of general jurisdiction; and (3) exercising jurisdiction is consistent with the United States Constitution and laws. For example, exercising jurisdiction is constitutionally permissible because:

    a. Defendant has purposefully directed its activities at the United States. Defendant has voluntarily chosen to create its own website and open an account on Amazon.com, an online marketplace, to access the United States' market. Upon information and belief, Amazon.com target the entire United States, and do not provide sellers like Defendant with the ability to opt into or out of any particular jurisdiction (e.g., state) within the United States. Both Amazon.com, the online marketplaces chosen by Defendant: (1) provide prices in U.S. dollars; (2) advertise free shipping to U.S. buyers, including buyers in Pennsylvania, and (3) provide testimonials of and reviews by U.S. buyers.

    b. Upon information and belief, Defendant has had sales of the Infringing Products in the United States.

    c. Plaintiff's injuries arise from Defendant's forum-related activities. Defendant's offer to sell, sale, and distribution of the Infringing Products to U.S. residents is a but for cause of all of the infringement alleged in this

action. Defendant knows or should know that infringement of works copyrighted by U.S. entities or persons is likely to injure U.S. residents.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391: Defendant does not reside in the United States and is subject to venue in any district. Further, Defendant solicits business from this Judicial District and, upon information and belief, conducts and transacts significant business in this Judicial District.

## INTRODUCTION

7.      Plaintiff Yuqi Zhang, is the owner of a federal copyright registration that protects the creative content of Plaintiff's image. The copyright protects a work of photograph by Yuqi Zhang, an artist who places significant value on the integrity of their creative works. Yuqi Zhang derives significant profits from the sale and distribution of photographs and licensed products.

8.      This action has been filed by Plaintiff to combat online copyright infringers who trade upon Plaintiff's reputation, goodwill, and valuable copyrights by selling and/or offering for sale products in connection with Plaintiff's images. In addition, Defendant is selling unauthorized products that are based on and derived from the copyrighted subject matter of Plaintiff's images.

9.      Plaintiff is the owner of United States Copyright Registration No. VA 2-494-517 (titled "24PCS Toys") (collectively the "Works-In-Suit"). These registrations are

valid, subsisting, and in full force and effect. A true and correct copy of the registration

certificate for the Works-In-Suit is attached hereto as **Exhibit A**. Upon information and

belief, the copyrights have effective dates that predate Defendant's acts of copyright

infringement.

10.     In an effort to illegally profit from the creative content of the Works-In-

Suit, Defendant has created a Merchant Storefront and designed it to appear to be

selling authorized Works-In-Suit.

11.     The Defendant Merchant Storefront's unauthorized products share unique

identifiers and design elements suggesting that Defendant's illegal operations arise out

of the same transaction, occurrence, or series of transactions or occurrences. Defendant

attempts to avoid liability by going to great lengths to conceal both its identity and the

full scope and interworking of its illegal operation. Plaintiff is forced to file this action to

combat Defendant's piracy of the Works-In-Suit. Plaintiff has suffered, and continues to

suffer, irreparable harm due to the loss of control over the quality and creative content

of her valuable copyrighted works, as well as damage to her reputation, goodwill, and

ability to license as a result of Defendant's actions. Accordingly, Plaintiff seeks

injunctive and monetary relief.

12.     The rise of online retailing, coupled with the ability of e-commerce sites to

hide their identities, has made it nearly impossible for policing actions to be undertaken

by Plaintiff because taking advantage of takedown procedures to remove infringing

products would be an ineffective and endless game of whack-a-mole against the mass piracy that is occurring over the internet. Sadly, a swarm of infringers have decided to trade upon Plaintiff's reputation, goodwill, and valuable copyrights by selling and/or offering for sale products in connection with Plaintiff's images. The aggregated effect of the mass piracy that is taking place has overwhelmed Plaintiff and Plaintiff's ability to police Plaintiff's rights against the dozens of anonymous defendants who are selling illegal infringing products at prices well below an original.

13.     To be able to offer the infringing products at a price substantially below the cost of original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As Homeland Security's recent report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network:

> Historically, many counterfeits were distributed through swap meets and individual sellers located on street corners. Today, counterfeits are being trafficked through vast e-commerce supply chains in concert with marketing, sales, and distribution networks. The ability of e-commerce platforms to aggregate information and reduce transportation and search costs for consumers provides a big advantage over brick-and-mortar retailers. Because of this, sellers on digital platforms have consumer visibility well beyond the seller's natural geographical sales area.

10

> Selling counterfeit and pirated goods through e-commerce is a highly profitable activity: production costs are low, millions of potential customers are available online, transactions are convenient, and listing on well-branded e-commerce platforms provides an air of legitimacy.
>
> The impact of counterfeit and pirated goods is broader than just unfair competition. Law enforcement officials have uncovered intricate links between the sale of counterfeit goods and transnational organized crime. **A study by the Better Business Bureau notes that the financial operations supporting counterfeit goods typically require central coordination,** making these activities attractive for organized crime, with groups such as the Mafia and the Japanese Yakuza heavily involved. Criminal organizations use coerced and child labor to manufacture and sell counterfeit goods. In some cases, the proceeds from counterfeit sales may be supporting terrorism and dictatorships throughout the world.

*See* Department of Homeland Security, Combating Trafficking in Counterfeit and Pirated Goods, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19 (emphasis added) attached hereto as **Exhibit B**.

14.     The Defendant Merchant Storefront's unauthorized products share unique identifiers and design elements suggesting that Defendant's illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendant uses aliases to avoid liability by going to great lengths to conceal both its identity as well as the full scope and interworking of its illegal operation. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities:

The scale of counterfeit activity online is evidenced as well by the significant efforts e-commerce platforms themselves have had to undertake. A major e-commerce platform reports that its proactive efforts prevented over 1 million suspected bad actors from publishing a single product for sale through its platform and blocked over 3 billion suspected counterfeit listings from being published to their marketplace. Despite efforts such as these, private sector actions have not been sufficient to prevent the importation and sale of a wide variety and large volume of counterfeit and pirated goods to the American public.

A counterfeiter seeking to distribute fake products will typically set up one or more accounts on online third-party marketplaces. The ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders. Rapid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked. On these sites, online counterfeiters can misrepresent products by posting pictures of authentic goods while simultaneously selling and shipping counterfeit versions.

…

Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors.

*Id.* At 5, 11, 12

15.     Plaintiff has been and continues to be irreparably harmed through the loss of control over Plaintiff's reputation, goodwill, ability to license, and the quality of goods featuring the Works-In-Suit, as well as the devaluation of the exclusivity associated with Plaintiff's photograph and professional reputation. The rise of

12

eCommerce as a method of supplying goods to the public exposes brand holders and

content creators that make significant investments in their products to significant harm

from counterfeiters:

> Counterfeiting is no longer confined to street-corners and flea markets. The problem has intensified to staggering levels, as shown by a recent Organization for Economic Cooperation and Development (OECD) report, which details a 154 percent increase in counterfeits traded internationally — from $200 billion in 2005 to $509 billion in 2016. Similar information collected by the U.S. Department of Homeland Security (DHS) between 2000 and 2018 shows that seizures of infringing goods at U.S. borders have increased 10-fold, from 3,244 seizures per year to 33,810.
>
> …
>
> The rise in consumer use of third-party marketplaces significantly increases the risks and uncertainty for U.S. producers when creating new products. It is no longer enough for a small business to develop a product with significant local consumer demand and then use that revenue to grow the business regionally, nationally, and internationally with the brand protection efforts expanding in step. Instead, with the international scope of e-commerce platforms, once a small business exposes itself to the benefits of placing products online — which creates a geographic scope far greater than its more limited brand protection efforts can handle — it begins to face increased foreign infringement threat.
>
> …
>
> Moreover, as costs to enter the online market have come down, such market entry is happening earlier and earlier in the product cycle, further enhancing risk. If a new product is a success, counterfeiters will attempt, often immediately, to outcompete the original seller with lower-cost counterfeit and pirated versions while avoiding the initial investment into research and design.
>
> …
>
> Counterfeiters have taken full advantage of the aura of

13

authenticity and trust that online platforms provide. While e-commerce has supported the launch of thousands of legitimate businesses, their models have also enabled counterfeiters to easily establish attractive "store-fronts" to compete with legitimate businesses.

*See Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (**Exhibit B**) at 4, 8, 11.

16.    Not only are the creators and copyright owners harmed, the public is harmed as well:

> The rapid growth of e-commerce has revolutionized the way goods are bought and sold, allowing for counterfeit and pirated goods to flood our borders and penetrate our communities and homes. Illicit goods trafficked to American consumers by e- commerce platforms and online third-party marketplaces threaten public health and safety, as well as national security. This illicit activity impacts American innovation and erodes the competitiveness of U.S. manufacturers and workers. The President's historic memorandum provides a much warranted and long overdue call to action in the U.S. Government's fight against a massive form of illicit trade that is inflicting significant harm on American consumers and businesses. This illicit trade must be stopped in its tracks.

> *Id.* At 3,4. (Underlining in original)

17.    Plaintiff's investigation shows that the telltale signs of illegal piracy are present in the instant action. The Defendant Merchant Storefront's infringing products share unique identifiers and design elements suggesting that Defendant's illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendant attempts to avoid liability by going to great lengths to conceal

both its identity and the full scope and interworking of its illegal piracy operation. Plaintiff is forced to file this action to combat Defendant's infringement of the Works-In-Suit, as well as to protect unknowing consumers from purchasing unauthorized reproductions of the Works-In-Suit over the internet.

## THE PLAINTIFF

18.   Plaintiff Yuqi Zhang is the owner of the Copyright Registration that protects the Works-In-Suit. Yuqi Zhang is an artist from Shaanxi, China. Yuqi Zhang derives significant profits from the sale and distribution of photographs and licensed products.

19.   Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting his art, including the Works-In-Suit. Plaintiff has also invested substantial time, money, and effort in building up and developing consumer awareness, goodwill, and recognition in the Works-In-Suit. As a result, reproductions associated with Yuqi Zhang are recognized and exclusively associated by consumers, collectors, the public, and the trade as works authorized by Plaintiff.

20.   The success of the Works-In-Suit is due in large part to Plaintiff's marketing, promotional, and distribution efforts.

21.   As a result of Plaintiff's efforts, the quality of authorized reproductions,

15

the promotional efforts for Plaintiff's products and designs, press and media coverage, and social media coverage, members of the public have become familiar with The Works-In-Suit and associate them exclusively with Plaintiff.

22.     Plaintiff has made efforts to protect Plaintiff's interests in and to the Works-In-Suit. No one other than Plaintiff and Plaintiff's licensees are authorized to manufacture, import, export, advertise, create derivative works, offer for sale, or sell any goods utilizing the Works-In-Suit image without the express written permission of the Plaintiff.

## THE DEFENDANT

23.     Defendant is an individual or business entity who, upon information and belief, resides in the People's Republic of China or other foreign jurisdiction. Defendant conducts business throughout the United States, including within Pennsylvania and in this judicial district, through the operation of a fully interactive commercial website and online marketplace account operating under the Defendant Merchant Storefront. Defendant targets the United States, including Pennsylvania, and has offered to sell and, on information and belief, has sold and continues to sell illegal reproductions of the Works-In-Suit to consumers within the United States, including Pennsylvania and in this judicial district.

///

## THE DEFENDANT'S UNLAWFUL CONDUCT

24.     The success of the Works-In-Suit has resulted in significant copying of the creative content protected by Plaintiff's copyright registrations. Plaintiff has identified numerous fully interactive marketplace listings on Amazon.com and Walmart.com. Defendant targets consumers in the United States, including the Commonwealth of Pennsylvania, and has offered to sell and, on information and belief, has sold and continues to sell infringing products that violate Plaintiff's intellectual property rights in the Works-In-Suit to consumers within the United States, including the Commonwealth of Pennsylvania.

25.     Upon information and belief, Defendant facilitates sales by designing the Defendant Merchant Storefront so that it appears to unknowing consumers to be an authorized online retailer, outlet store, or wholesaler selling genuine reproductions of the Works-In-Suit.

26.     The Defendant Merchant Storefront intentionally conceals its identity and the full scope of its piracy operations in an effort to deter Plaintiff from learning Defendant's true identity and the exact interworking of Defendant's illegal operations. Through its operation of the Defendant Merchant Storefront, Defendant is directly and personally contributing to, inducing, and engaging in the sale of Infringing Products as alleged. Upon information and belief, Defendant knowingly and willfully manufactures, imports, distributes, offers for sale, and sells Infringing Products.

17

27. Upon information and belief, at all times relevant hereto, Defendant in this action has had full knowledge of Plaintiff's ownership of the Works-In-Suit, including Plaintiff's exclusive right to use and license such intellectual property and the goodwill associated therewith.

28. Defendant may go to great lengths to conceal its identity by using multiple fictitious names and addresses to register and operate the Defendant Merchant Storefront. Upon information and belief, Defendant regularly creates new websites and online marketplace accounts on Amazon.com using fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by Defendant to conceal its identity, the full scope and interworking of its pirating operation, and to avoid being shut down.

29. The Infringing Products for sale in the Defendant Merchant Storefront bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source.

30. In addition to potentially operating under multiple fictitious names, Defendant in this case, like defendants in other similar cases against online infringers, uses a variety of other common tactics to evade enforcement efforts. For example, infringers like Defendant will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and

Border Protection. A 2021 U.S. Customs and Border Protection report on seizure statistics indicated that e-commerce sales accounted for 13.3% of total retail sales with second quarter of 2021 retail e-commerce sales estimated at $222.5 billion. U.S. Customs and Border Protection, *Intellectual Property Right Seizure Statistics, FY 2021* (https://www.cbp.gov/sites/default/files/assets/documents/2022-Sep/202994%20-%20FY%202021%20IPR%20Seizure%20Statistics%20BOOK.5%20-%20FINAL%20%28508%29.pdf) at 23. A true and correct copy of CBP's FY 2021 report is attached hereto as **Exhibit C**. In FY 2021, there were 213 million express mail shipments and 94 million international mail shipments. *Id*. Nearly 90 percent of all intellectual property seizures occur in the international mail and express environments. *Id*. at 27. The "overwhelming volume of small packages also makes CBP's ability to identify and interdict high risk packages difficult." *Id*. at 23.

31.    Further, infringers such as Defendant typically operate multiple credit card merchant accounts and third-party accounts, such as Amazon Pay accounts, behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendant maintains offshore bank accounts and regularly moves funds from its Amazon Pay accounts to offshore bank accounts outside the jurisdiction of this Court. Indeed, analysis of Amazon Pay transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based Amazon Pay accounts to foreign-based

19

bank accounts, such as China-based bank accounts, outside the jurisdiction of this Court.

32.    Defendant, without any authorization or license, has knowingly and willfully pirated Plaintiff's Works-In-Suit copyright in connection with the advertisement, distribution, offering for sale, and sale of illegal products into the United States and Pennsylvania over the internet. The Defendant Internet Store offers shipping to the United States, including Pennsylvania, and, on information and belief, Defendant has offered to sell Infringing Products into the United States, including Pennsylvania.

33.    Defendant was, and is currently, offering for sale and selling the Infringing Products to the consuming public via Defendant's online storefront using its Seller ID. Defendant provides shipping, has actually shipped, and/or stands ready, willing, and able to ship the Infringing Products to customers located within this Judicial District.

## COUNT I
## COPYRIGHT INFRINGEMENT

34.    Plaintiff repeats and incorporates by reference herein the allegations contained in the above paragraphs of this Complaint.

35.    The Works-In-Suit and authorized reproductions have significant value and have been produced and created at considerable expense.

36.    At all relevant times, Plaintiff has been the holder of the pertinent

20

exclusive rights infringed by Defendant, as alleged hereunder, including but not limited to Works-In-Suit, including derivative works. The Works-In-Suit is the subject of a valid Copyright Registration Certificate issued by the Register of Copyrights. (**Exhibit A**).

37.    Defendant, without the permission or consent of Plaintiff, has sold and continues to sell online pirated derivative works of the copyrighted Works-In-Suit. Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Defendant's actions constitute infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 et seq.).

38.    The foregoing acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of the Plaintiff.

39.    As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504 and to Plaintiff's attorneys' fees and costs pursuant to 17 U.S.C. §505.

40.    The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyrights and ordering that Defendant destroy all unauthorized copies.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1). That Defendant, its affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with it be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. Using The Works-In-Suit or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized reproduction of the Works-In-Suit or is not authorized by Plaintiff to be sold in connection with the Works-In-Suit;

    b. passing off, inducing, or enabling others to sell or pass off any product or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Works-In-Suit;

    c. further infringing the Works-In-Suit and damaging Plaintiff's goodwill;

    d. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to

22

be sold or offered for sale, and which directly use the Works-In-Suit image, and which are derived from Plaintiff's copyright in the Works-In-Suit; and

e. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Merchant Storefront, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which are derived from Plaintiff's copyright in the Works-In-Suit;

2). Entry of an Order that, upon Plaintiff's request, those in privity with Defendant and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Defendant Merchant Storefront, shall:

a. disable and cease providing services for any accounts through which Defendant engages in the sale of products not authorized by Plaintiff which reproduce the Works-In-Suit or are derived from the Works-In-Suit, including any accounts associated with Defendant;

b. disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of products

23

not authorized by Plaintiff which are derived from the Works-In-Suit; and

    c.   take all steps necessary to prevent links to Defendant's accounts from displaying in search results, including, but not limited to, removing links to Defendant's accounts from any search index;

3).    For Judgment in favor of Plaintiff against Defendant that it has: a) willfully infringed Plaintiff's rights in Plaintiff's federally registered copyrights pursuant to 17 U.S.C. §501; and b) otherwise injured the business reputation and business of Plaintiff by Defendant's acts and conduct set forth in this Complaint;

4).    For Judgment in favor of Plaintiff against Defendant for actual damages or statutory damages pursuant to 17 U.S.C. §504, at the election of Plaintiff, in an amount to be determined at trial;

5).    That Plaintiff be awarded reasonable attorneys' fees and costs; and

6).    Award any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

///

///

///

24

Date: July 12, 2026                                  Respectfully submitted,


    /s/ Zheng "Andy" Liu    
Zheng "Andy" Liu (CBN 279327)
Aptum Law
1660 S Amphlett Blvd Suite 315
San Mateo, CA 94402
Email: Andy.Liu@AptumLaw.us
Phone: 650-475-6289

*ATTORNEY FOR PLAINTIFF*

25